## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

ROBERT M. MILLER,                        )
                                         )
                    *Plaintiff,*         )
                                         )
v.                                       )     Civil Action No. 1:16-cv-856
                                         )
MARTIN J. GRUENBERG,                     )
Chairman, Federal Deposit Insurance Corp.,)
                                         )
                    *Defendant.*         )
                                         )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Martin Gruenberg's Motion to Dismiss

Plaintiff's Second Amended Complaint ("SAC") for lack of subject matter jurisdiction and for

failure to state a claim. Dkt. No. 23. Defendant argues that the Court lacks jurisdiction over

certain claims in the SAC and that Plaintiff fails to set forth a claim on which relief can be

granted on the remainder of his numerous express and implied causes of action. Plaintiff Robert

Miller, proceeding *pro se*, filed the SAC against his former employer, the Federal Deposit

Insurance Corporation ("FDIC"), alleging violations of Title VII of the Civil Rights Act of 1964,

the Age Discrimination in Employment Act, and the Civil Service Reform Act ("CSRA").

Specifically, Plaintiff contends that FDIC officials discriminated against him through non-

selection for a number of promotions and special duties, because of his age, race, sex, and

disabilities. Plaintiff also contends that he was retaliated against for prior protected Equal

Employment Opportunity activity and that he was subject to a hostile work environment. For the

reasons discussed below, the Court GRANTS Defendant's Motion and the Second Amended

Complaint is DISMISSED WITH PREJUDICE.

## I. Background

### A. Factual History

Plaintiff is a Caucasian male, born in 1965, and a disabled veteran with a 60 percent compensable disability rating from the Veterans Administration. Plaintiff has a doctorate degree in Economics. Plaintiff was hired by the FDIC on March 10, 2008 as an Economic Analyst, Grade CG-9. He was subsequently promoted to CG-11 in March 2008 and CG-12 in March 2010. Plaintiff received satisfactory performance reviews during the years at issue in the complaint including a rating of IV (with V being highest) on 2009 and 2010 performance reviews.

Plaintiff applied for one of a number of new positions as a Financial Economist listed by Defendant in late 2011. The posted vacancies were Grade 12, Plaintiff's current Grade, but included annual promotions to Grades 13 and 14 upon satisfactory job performance. The positions required the submission of a writing sample. The listing was concomitant with the American Economics Association ("AEA") meetings held January 5-8, 2012.[1] Plaintiff avers that it is common knowledge among AEA participants that a "writing sample" is equivalent to a completed research paper of publishable quality. The position listing did not mention that candidates would be required to present the results of research during the interview process. Plaintiff applied for the vacancies on or before January 17, 2012. On January 20, 2012, Plaintiff received an email from USAJobs stating that he was referred to the selecting official as "Best Qualified" because of his disabled veteran status.

On January 24, 2012, Plaintiff received a telephone call from Cathy Wright, an administrative assistant responsible for organizing interview times and travel arrangements for applicants to the positions. Plaintiff avers that Wright did not identify herself as an

---

[1] Plaintiff states that the FDIC advertises similar job openings every year in anticipation of the AEA meetings.

administrative assistant. She informed Plaintiff that he would be required to present the results of a "recent" research paper on January 27, 2012 at 9:00 a.m. and that a copy of the presentation was due to her no later than noon on the day before the interview. Wright also requested Plaintiff's travel itinerary.

Plaintiff did not have a presentation prepared based on recent research. He endeavored to no avail to assemble a new presentation and prepared to email Wright on January 25, 2012 to inform her that he needed additional time. Wright called Plaintiff that morning and stated that it would not be possible to give Plaintiff additional time and that it was pointless for him to come to the interview if he was not prepared to present. Wright asked Plaintiff for a letter of withdrawal and Plaintiff wrote such a letter. The FDIC continued to interview candidates for the positions up to one month after Plaintiff's scheduled interview and ultimately selected three candidates for the positions who were substantially younger than Plaintiff.

Plaintiff alleges that the reason he was treated in this fashion by Wright was in retaliation for Plaintiff's prior employment-related conduct and Plaintiff's subsequent grievance filings. Specifically, in early 2011, a former college intern reported to Plaintiff's manager, Shayna Olesiuk, that Plaintiff would visit her desk and stare at her legs when she wore a dress to the office and made comments of a sexual nature during her employment. The intern made the complaint after she left the FDIC. Olesiuk conducted an investigation of these claims which included consultation with other FDIC employees. Through the investigation, another student intern identified three instances in which Plaintiff's comments of a sexual nature made her feel uncomfortable. The same day that the second intern informed Olesiuk of the comments, Olesiuk changed the classification of a Grade 13 position to which Plaintiff had sought promotion to a Grade 9 position. The second intern followed up with Olesiuk on her claims on April 13, 2011.

3

Contemporaneously, Olesiuk cancelled Plaintiff's participation in a presentation to an outside organization.

On April 18, 2011, Olesiuk informed Plaintiff that she received reports of harassment and would be conducting an investigation which could result in disciplinary action. One week later, Olesiuk, along with another FDIC official, Patrick McKenna, met with Plaintiff and his union representative. Plaintiff denied all of the allegations raised during the interview. As a result of the interview, Olesiuk issued plaintiff a Letter of Warning ("LOW"), an informal reprimand, on May 5, 2011. Misunderstanding the nature of the reprimand, Plaintiff asked Olesiuk whether the LOW was formal or informal, to which Olesiuk directed Plaintiff to attend a course on tactful communication which overlapped with a presentation Plaintiff was scheduled to give.

Plaintiff met with Olesiuk on May 26, 2011 for a mentorship meeting. During the meeting, Plaintiff asked Olesiuk if the vacant position was reclassified to Grade 9 instead of Grade 13 because of the allegations against Plaintiff. Olesiuk replied that it was "in part" and that management was hesitant to allow Plaintiff to perform future presentations because of concern about what Plaintiff might say.

Sometime shortly after the meeting, Plaintiff filed a grievance under the Union Collective Bargaining Agreement ("CBA") claiming that Olesiuk and other unnamed employees conspired to take tangible employment actions without conducting a proper investigation. The grievance process provided for up to three "steps" of review. Olesiuk acted as the Step 1 grievance official which Plaintiff believes to be a violation of Merit System Protection Board ("MPSB") policy. Olesiuk was assisted by Barbara Pfaffenberger who reported directly to Joy Crosser, one of the unidentified parties in Plaintiff's grievance. Following a hearing, on July 14, 2011, Olesiuk denied Plaintiff's grievance. Plaintiff appealed to a Step Two review. Kathy Kalser, an FDIC

4

employee who was also a subject of the grievance conducted the review. Kalser affirmed the Step 1 findings. Plaintiff requested a Step 3 review. Kalser designated Richard Brown as the Step 3 official, Plaintiff objected and the Step 3 Review was delegated to Deputy Director Diane Ellis. On October 6, 2011 Ellis denied Plaintiff's claims for relief. On October 24, 2011, Plaintiff initiated informal EEO counseling alleging discrimination because of sex in the harassment investigation and grievance process. Upon advice of the counselor that the claim would be dismissed, Plaintiff withdrew the complaint on November 2, 2011. Plaintiff subsequently filed suit in the Northern District of California against the FDIC for conduct relating to the 2011 grievance. The claim was dismissed by the District Court for failure to exhaust EEO remedies and affirmed by the Ninth Circuit.

At the end of 2011, Kalser and Olesiuk did not publish three of Plaintiff's research papers completed during the year. On January 13, 2012, Plaintiff submitted a request for a desk audit which would have enabled Plaintiff to receive additional compensation even if his grade level remained unchanged. On January 27, 2012, Olesiuk determined that the position was appropriately classified and the FDIC denied the request for reclassification. Plaintiff again sought EEO counseling on February 28, 2012. Plaintiff's claims were not resolved within 30 days and he was issued a formal right to file a complaint. Plaintiff filed an appeal with the EEOC of the FDIC's final decision on his discrimination allegations brought pursuant to the Rehabilitation Act and Age Discrimination in Employment Act. On March 29, 2016, the EEOC affirmed the Agency's decision.

Since Plaintiff's initial grievance, Plaintiff has received a passing rating of III (out of V) on his 2011-2015 performance evaluations—one Grade lower than his 2009 and 2010 reviews. Plaintiff claims that his rating reduction from IV to III was made in retaliation for Plaintiff's

grievance.  Plaintiff further alleges that he was turned down for: duty as a Corporate Employee

Program Facilitator in 2012 and 2013, despite serving in that role from 2008 through 2011; a

Financial Analyst position in 2014; and participation in the FDIC Executive Potential Program

("FPP") a leadership training program.  Plaintiff also avers that he has been generally denied

promotion to numerous Grade 13 positions, denied the opportunity to participate in leadership

and facilitation programs, and not considered for awards.

In January 2015, Plaintiff applied for a position substantially similar to the 2011

Financial Economist vacancy.  Plaintiff was again asked to present "recent" research.  Plaintiff

advised the selecting official that his most recent published work was still from 2004.  The

selecting official advised Plaintiff that he could present the 2004 paper and also briefly present

his ongoing research.  Plaintiff withdrew from this position after receiving and accepting a

different offer of work at a Grade 13/14 level.

In addition to his claims for retaliation, Plaintiff alleges that the FDIC's conduct over a

five year period created a hostile and abusive working environment.  Specifically, Plaintiff

alleges that he did not receive any detailed information about the sexual harassment claims made

against him and that FDIC attorneys suborned perjury during the investigation for which they

were not reprimanded.  Furthermore, Plaintiff avers that Defendant promoted some of the

individuals involved in Plaintiff's review process; the individuals who reviewed Plaintiff's

claims were mostly women, many of them were minority women, and several were minority

men; the FDIC conducts training and events relating to certain diversity groups while excluding

others including Catholics, Mormons, Irish, and Italians; and the persons involved in Plaintiff's

review process are Democrats and/or political liberals.  These acts left Plaintiff in constant fear

of losing his job from April 2011 onward and rendered him unable to interact with women at work.

Plaintiff also brings two claims against the Defendant alleging that he was discriminated against when his union, the National Treasury Employees Union ("NTEU"), failed to pursue arbitration against the FDIC on his behalf.

### B. Procedural History

Plaintiff filed the Complaint in this matter on July 5, 2016. Dkt. No. 1. Defendant moved to dismiss for lack of subject matter jurisdiction on September 6, 2016. Dkt. No. 8. The Court granted the motion and dismissed the Complaint without prejudice on October 14, 2016. Dkt. No. 18. During the hearing, the Court advised Plaintiff that he needed to plead more than conclusory allegations that the reason he suffered the alleged adverse employment actions was because of Defendant's desire to discriminate against him. On November 14, 2016, Plaintiff filed a First Amended Complaint ("FAC"). Dkt. No. 19. Before Defendant could respond to the FAC, Plaintiff filed, without leave, a Second Amended Complaint ("SAC") on December 5, 2016. Dkt. No. 22. Defendant moved to dismiss the SAC for failure to state a claim and lack of jurisdiction on December 19, 2016. Dkt. No. 23.

### II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits the defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The court must dismiss the action if it determines at any time that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Plaintiff bears the burden to establish that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A district court should grant a Rule 12(b)(1) motion if the material jurisdictional facts are known and the moving party is

entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The Court must also dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) unless it contains sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

In order to survive a motion to dismiss on a discrimination claim under either Title VII or the ADA, the plaintiff must allege facts establishing the plausibility of the alleged discrimination. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) *aff'd*, 132 S. Ct. 1327 (2012). The plaintiff need not plead facts sufficient to constitute a prima facie case of discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). However, "courts may look to the requirements of a prima facie case as a guide in assessing the plausibility of a plaintiff's claim for relief." *Craft v. Fairfax County*

8

*Government*, 2016 WL 1643433 at \*4 (E.D. Va. April 26, 2016); *see also McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582, 585 (4th Cir. 2015) (applying prima facie case as guide in motion to dismiss); *Coleman*, 626 F.3d at 190-91 (same).

### III. Discussion

Over the course of the 90-page SAC, Plaintiff sets forth a number of claims which he believes he has adequately exhausted and for which he has stated a claim for relief.[2] The details of the causes of action are not clearly delineated. Because Plaintiff filed the SAC *pro se*, the memorandum liberally construes the claims to include:

- the May 29, 2011 employment grievance terminated by the NTEU;

- the May 11, 2012 discrimination by NTEU for failing to pursue arbitration relating to PMR grievance;

- EEO Claim #: FDICEO-12-027, discrimination in the form of a non-selection relating to withdrawal from 2011 Grade 12 Financial Economist position;

- FDICEO-13-013 and FDICE0-14-017, discrimination in the form of an undeserved 2012 and 2013 performance evaluations[3] and nonselection for a work assignment;

- FDICEO-13-046, discrimination in the form of denying Plaintiff of key duties and negatively impacting 2013 performance evaluation and not selecting Plaintiff for a position as a Financial Management Analyst;

- FDICEO-15-007, discrimination in the form of an undeserved 2014 performance evaluation; assignment to menial duties below Plaintiff's level of education, experience,

---

[2] The memorandum is structured around Plaintiff's list of exhausted claims because the Court has previously advised the Plaintiff that he cannot raise claims that have not been administratively exhausted. *See Craft v. Fairfax County Government*, No. 1:16CV86, 2016 WL 1643433, at \*3 (E.D. Va. Apr. 26, 2016) ("In employment discrimination claims, '[r]eceipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint.' ") quoting *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995).
[3] In the opposition to the Motion to Dismiss, Plaintiff asks the Court to liberally construe his original complaint to include a claim for discrimination based on his 2014 performance review. Dkt. No. 30 at 24.

and capabilities; non selection for details and for a position as a Financial Analyst in 2014; subjection to a hostile work environment;

- FDICEO-16-034, discrimination in the form of non-selection for FDIC Executive Potential Program in 2015/2016.

Defendant contends that Plaintiff has failed to state a claim respecting any of these accusations and that the Court lacks subject matter jurisdiction respecting the two claims relating to the NTEU. For organizational purposes, the memorandum reorganizes the claims to focus on five issues: (A) challenges to the grievance process; (B) discrimination for non-selection to the late 2011 financial analyst position; (C) discrimination and reprisal for duty changes and other non-selections; (D) discrimination and reprisal in the form of 2012, 2013, and 2014 Performance Evaluations; and (E) the hostile work environment claim. Each of these issues is addressed in turn.

### A. Challenges to the Grievance Process

These claims arise out of Plaintiff's objections to the handling of grievances filed under the NTEU's Collective Bargaining Agreement ("CBA").

Defendant argues that Plaintiff fails to state a claim for relief for its challenges to the grievance arbitration process because the FDIC is not a properly named Defendant. Rather, Plaintiff should be required to state his claim against the NTEU for not pursuing the grievance. Further, Defendant argues that even if Plaintiff's claims are construed as unfair labor practice ("ULP") claims against Defendant for improperly handling the grievances, the Court lacks subject matter jurisdiction pursuant to the Civil Service Reform Act ("CSRA").

Plaintiff counters that he only alleged facts about the NTEU's failure to exhibit his exhaustion of administrative remedies and that his claim is against the Defendant for judicial

review of the grievance decisions.  Accordingly, the memorandum treats the claim as a ULP action against Defendant.[4]

"Federal employees generally have the right to choose between bringing their employment-related complaints as ULP charges, or as grievances under the employees' negotiated grievance procedure." *Dep't of Commerce, Bureau of Census v. FLRA*, 976 F.2d 882, 888 (4th Cir. 1992).  "A victim of an alleged ULP may petition the General Counsel of the [Federal Labor Relations Authority], and, after investigation, the General Counsel may conduct hearings to resolve the employee's complaint." *Id.* at 885 quoting §§ 7118, 7105(a)(2)(G).  "Judicial review of FLRA decisions may be had in either the U.S. Court of Appeals for the circuit in which the aggrieved party resides or conducts business, or in the U.S. Court of Appeals for the District of Columbia." *Id.* quoting § 7123(a).

In light of the foregoing jurisdiction-conferring scheme established by the CSRA, the Court lacks subject matter jurisdiction over these claims.  While Plaintiff has pleaded that he filed complaints with the FLRA, those complaints were denied as untimely.  Any appeal Plaintiff could file in response to the FLRA decision would be properly before the Court of Appeals for the Fourth Circuit or the Court of Appeals for the District of Columbia. *See* 5 U.S.C. § 7123(a). Accordingly the claims must be dismissed.

B. Discrimination for Non-Selection to Late 2011 Financial Analyst Position

This claim arises out of Plaintiff's allegation of age, sex, and disability discrimination and reprisal related to the late 2011 Grade 12 job posting which Plaintiff was not selected for after withdrawing his application.

---

[4] To the extent that Plaintiff is bringing a claim against the Defendant for NTEU's failure to take the cases to arbitration those claims have been brought against the wrong defendant and should be raised against the NTEU.

Defendant contends that Plaintiff has failed to state a claim upon which relief can be granted for two reasons. First, Plaintiff withdrew the application for this position because he believed that he had no "recent research" to present at the interview but nevertheless no one expressly told him that his most recent paper, from 2004, was unsatisfactory for this purpose. Defendant charges that Plaintiff's use of the 2004 paper in a 2015 job interview with Defendant reveals that Defendant's employees did not regard Plaintiff's work as insufficiently recent. Defendant further argues that the subsequent use of the 2004 paper reveals that the "recent research" requirement did not have a disparate impact on Plaintiff and similarly situated older employees. Second, Defendant contends that Plaintiff has failed to allege more than conclusory allegations that the administrative assistant who told Defendant not to go to the interview was aware of Plaintiff's protected EEO activity or told him to withdraw because of his status in a protected class.

Plaintiff counters that he has specifically alleged that Administrative Assistant Wright induced Plaintiff to withdraw by giving him an impossible burden to meet and that Defendant knew that other, younger applicants possessed "recent research" and were given three months advance notice of the paper requirement. Plaintiff has not responded to the claim that Wright lacked knowledge of any EEO protected activity and that Plaintiff failed to show Wright acted because of Plaintiff's participation in a protected class. Plaintiff also contends that the requirement to present recent research is a facially neutral policy which has a disparate impact on older employees because Plaintiff and another candidate over age 40 withdrew because they did not have recent research to present.

A claim cannot be stated under Title VII for the voluntary withdrawal of an application prior to a final employment decision. *See Smith v. Bd. of Trustees, St. Mary's Coll. of Maryland*,

155 F.3d 561 (4th Cir. 1998) ("Because Title VII protects against discrimination only in final employment decisions, not intermediate steps, the court concluded that Smith did not state a claim under Title VII because she had withdrawn her application in the middle of the process.").

Arguably, *Smith* would not apply if, as Plaintiff contends, he was coerced to withdraw from the application process. *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 763 (4th Cir. 1998) (finding that voluntary withdrawal does not show prima facie case of discrimination where there is no indication "it was futile to apply or that [the employer] prevented her from applying"), *cert. granted, judgment vacated,* 527 U.S. 1031 (1999). However, Plaintiff has not put forward a plausible claim that he was coerced. Plaintiff quotes Wright (without citation) as stating that a recent paper means "something in the last few years. We don't want something that is twenty years old." Dkt. No. 19 at ¶ 269. Even if Wright had conveyed this view to Plaintiff when he applied, and Plaintiff does not allege that she did, Plaintiff's research paper would not offend this "standard" because it is not twenty years old. Further, Plaintiff's own allegations suggest that Defendant did not have a policy on recent research which excluded the 2004 paper because Plaintiff was permitted and did use the paper as part of his 2015 interview. The only action taken by Wright was to advise Plaintiff that it would be futile for him to come to the interview if he did not have what he believed to be recent research to present. On this instruction, Plaintiff made the determination that his work was insufficient and that withdrawal was appropriate.

Respecting Plaintiff's disparate impact claim, he alleges that the "recent research" policy was a facially neutral employment practice that, as implemented, prejudiced older applicants. However, Plaintiff has not alleged that a "recent research" policy exists and, even if such a policy existed, Plaintiff's use of the same 2004 paper in support of his successful 2015

application suggests that the policy itself is not being used in a manner intended to discriminate against older applicants.

Respecting the retaliation claims, Plaintiff has not pleaded that Wright knew of Plaintiff's prior EEO activity and acted in response to such activity or because of Plaintiff's status in a protected class.

For these reasons, Plaintiff has failed to state a claim arising out of his non-selection from the 2011 position.

### C. Discrimination and Reprisal for Duty Changes and other Non-Selections

Plaintiff advances a series of additional claims for discrimination and reprisal based on changes to his duties and non-selection for positions from 2011 through the present. These complaints include: (1) the denial of "key duties" and assignment to "menial duties"; (2) non-selection for certain work "details"; (3) non-selection for a 2012 facilitator position; (4) non-selection for a financial analyst position in 2014; and (5) non-selection for an FDIC Executive Potential Program in 2015. Defendant demurs that Plaintiff has failed to state a claim respecting any of these allegations.

### 1. Denial of "key duties" and Assignment to "menial duties"

This claim arises out of Plaintiff's allegations that he was denied key duties and assigned to menial duties based on discriminatory animus or in retaliation for Plaintiff's protected EEO activity. These denials and changed duties included Plaintiff's supervisors' unwillingness to publish, or publish without significant edits, three papers that Plaintiff authored in 2011 and 2012, not permitting Plaintiff to give presentations, and requiring Plaintiff to prepare summaries of updates to economic data which Plaintiff alleges could have been produced by an intern. Notwithstanding the fact that Defendant did not respond directly to this claim and taking all facts

as true for the purposes of the motion, Plaintiff nevertheless fails to state a claim for relief for the alleged denials and changes of duties.

Just because a new set of duties is unappealing to the employee does not mean it constitutes an adverse employment action. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999).

In this case, Plaintiff's assignment to new tasks, non-selection for presentations, and non-publication are not adverse employment actions. Plaintiff remained within the same chain of supervisory authority throughout the period and worked with the same employees; the only change was the types of assignments that he worked on. *See Cowley v. Lynch*, No. 1:14-CV-677, 2015 WL 5020891, at *6 (E.D. Va. Aug. 21, 2015) (finding no adverse employment action where employees continued to work within the same department and only the subject matter of assignments was altered). Further, the fact that he was denied opportunities to participate in activities alone does not give rise to an adverse employment action. *See Jackson v. Geren*, No. CIV.A. 07-1063, 2008 WL 3910674, at *4 (E.D. Va. Aug. 19, 2008) ("the decision not to select Plaintiff to conduct Summer Safety Training-do not constitute adverse employment actions."). In fact, Plaintiff received raises in 2012 and 2013 and was promoted in 2014 and 2015. Accordingly, it cannot be said that any of these task changes had an adverse effect on Plaintiff's employment and Plaintiff has failed to state a claim for relief for these allegations.

### 2. Non-selection for "details"

Plaintiff alleges that from April 2011 through February 2015, Olesiuk refused to permit Plaintiff to perform "details" that would have enabled him to become competitive for promotion and that would have contributed to a better performance evaluation. He avers that Olesiuk encouraged him to apply for such opportunities but that all of the decision-makers for these details were individuals who were named in Plaintiff's earlier EEOC complaints. Notwithstanding the fact that Defendant did not respond directly to this claim and taking all facts as true for the purposes of the motion, Plaintiff nevertheless fails to state a claim for relief for the alleged denial of participation in details.

While Plaintiff alleges that these details would have enabled him to become competitive for promotion, Plaintiff fails to allege that he was passed over for these details because of his status as a member of a protected class. He does allege that the decision makers for detail opportunities were named in his prior EEO complaints but he fails to allege any specific details to which he applied and received a rejection. Accordingly the SAC does not make plausible that any such denials were based on Plaintiff's membership in a protect class or issued by an individual familiar with Plaintiff's EEO activity. For these reasons, Plaintiff has failed to state a claim for relief for these allegations.

### 3. Non-selection for Facilitator Position in 2012 and 2013

Plaintiff contends that he was not selected in 2012 and 2013 to act as a facilitator for the Corporate Employee Program due to his sex, disability, and reprisal and that far less qualified minority females were selected in his place. Plaintiff was selected for the program from 2008 through 2011.

16

Defendant argues that the conclusory allegation that less qualified minority females were selected is insufficient to state a claim that the non-selection was discriminatory. Further, Defendant contends that the same individual, Gary Beasley, who appointed Plaintiff to the program from 2008 through 2011, elected not to appoint him in 2012 and 2013. Because Plaintiff's protected classes did not change from 2008 through 2013, there is a strong inference that Beasley could not have been motivated by discrimination on those bases in 2012 and 2013. Defendant further notes that Plaintiff provides no evidence that Beasley was aware of any EEO protected activity. Finally, Defendant argues that non-selection for this temporary duty does not constitute an adverse employment action because it did not result in a promotion, pay raise, or any significant change in employment duties.

As noted above, non-selection for a duty does not on its own constitute an adverse employment action unless it "had a significant detrimental effect on Plaintiff's employment." *Jackson*, 2008 WL 3910674, at *4. Plaintiff did not suffer such a detrimental effect because he was promoted in 2014 following two years of non-selection for this facilitation program. Furthermore, the "same actor" inference raised by the Defendant is strong in this case. *See McDonald v. Loudoun County Board of Supervisors*, 2011 WL 3951621 at *3 (E.D. Va. Sept. 6, 2011) ("Under the 'same actor' inference recognized by the Fourth Circuit, there is a strong presumption that Sheriff Simpson would not hire somebody in Plaintiff's protected class only to discriminate against him at a later date by choosing not to promote him.").

Plaintiff does not allege that his protected classes changed between the numerous instances on which Beasley hired him for the facilitator position and the two years in which he did not. Without more in the SAC, it is not plausible that Beasley was non-discriminatory from 2008 through 2011 but that his non-selection of Plaintiff in 2012 and 2013 was discriminatory.

17

*See Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (finding that when the same actor who hired an individual undertakes an adverse employment action within a relatively short time against that individual, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer). Finally, as Defendant observes, Plaintiff makes no allegation in his retaliation claim that Beasley knew of Plaintiff's protected EEO activity before the non-selections.

### 4. Non-selection for Financial Analyst Position in 2014

Plaintiff alleges that on or about December 31, 2014, Plaintiff was not selected for a position as a Financial Analyst for vacancy announcement 2014-HQ-B1662. 215. The selecting official for the position, Margaret Hanrahan, reported directly to Richard Brown and Diane Ellis, both of whom were named in Plaintiff's EEO complaints. Plaintiff alleges that he was substantially better qualified than the selectee who did not possess a Ph.D. in Economics and had substantially less experience. Plaintiff also alleges that the selectee was under age 40, had no known prior EEO activity, had no known disabilities, and was an ethnic minority immigrant coming from Eastern Europe.

Defendant contends that these naked assertions of higher qualification are insufficient to support a cause of action for discrimination. Further, Defendant argues that Plaintiff has not alleged Hanrahan's knowledge of Plaintiff's discrimination bases or protected EEO activity.

This claim must be dismissed because Plaintiff has failed to assert facts establishing the plausibility of the claim. Plaintiff invites the Court to infer that because Hanrahan reports to individuals named in Plaintiff's EEO complaints that they unduly influenced Hanrahan to not select Plaintiff. Plaintiff also invites the Court to infer that Plaintiff was more qualified despite offering no information about the qualifications for the position or of any other applicants.

These claims are merely conclusory and lack the factual assertions to support a claim for discrimination or reprisal in the 2014 hiring decision.

### 5. Non-selection for FDIC Executive Potential Program

This claim arises out of Plaintiff's allegation that he was not selected for participation in the FDIC Executive Potential Program in 2015. Plaintiff contends that the persons responsible for the selection process were named in Plaintiff's prior grievances and complaints and that the individuals selected for the positions were less qualified than Plaintiff and not part of his protected classes.

Defendant argues that Plaintiff has failed to state a claim that the decision not to select him for this position was motivated by retaliation for prior EEO activity or discriminatory bases. Defendant notes that one of the selectors was a white Caucasian male, just like the Plaintiff. Defendant further contends that because the program did not result in a promotion, pay raise, or any significant change in employment it cannot form the basis of an adverse employment action.

As discussed above, the fact that Plaintiff was not selected for a training program does not automatically give rise to an adverse employment action. While the Executive Potential Program is intended to identify and groom individuals for leadership positions, the pace of Plaintiff's promotions and pay raises continued unabated notwithstanding the non-selection for the program. Plaintiff was promoted to Grade 14 shortly before applying for the program and has since been promoted to Grade 15—receiving raises at each juncture. Thus the non-selection for the Executive Potential Program cannot form the basis of an adverse employment action.

In sum, similar deficiencies infect each of Plaintiff's claims for non-selection and duty changes. The programs and duties for which he was not selected or to which he was assigned did not affect his pay or seniority in a way which qualifies as an adverse employment action.

19

Further, Plaintiff has failed to show that the reasons for the non-selections and duty changes were because of his membership in a protected class or his prior EEO activity. Thus the claims must be dismissed.

### D. Discrimination and Reprisal for 2012, 2013, 2014 Performance Evaluations

Plaintiff further alleges that he was discriminated against on the basis of disability, sex, and reprisal for undeserved 2012, 2013, and 2014 performance evaluations. This section discusses the discrimination claims and the reprisal claims separately.

#### *1. Discrimination Claims*

With respect to the discrimination claims, Defendant contends that Plaintiff has failed to show any reason that he was entitled to ratings higher than those that he received in 2012 and 2013 and that courts have routinely granted 12(b)(6) motions where allegations of satisfactory work performance lacked factual support.

Even if Plaintiff self-assessed that he was entitled to a higher rating, Defendant argues that "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (citations omitted). Further, Defendant asserts that Plaintiff did not allege in more than a conclusory fashion that the PMR Ratings of III in 2012, 2013, and 2014 were rendered because of Plaintiff's age or disability. In addition, Defendant claims that Plaintiff has not shown that similarly situated employees outside of his protected class were treated differently. Finally, Defendant notes that the same actor, Olesiuk, was responsible for hiring Plaintiff in 2008, awarding him IV ratings in 2009 and 2010, and awarding him the 2012 and 2013 PMRs of III. During the relevant time Plaintiff's membership in protected classes was unchanged. Thus the Court can infer that Olesiuk did not subsequently discriminate against Plaintiff.

Plaintiff rejoins that a same actor inference does not apply here because significant time elapsed between Olesiuk hiring Plaintiff and taking the adverse action. In any case, Plaintiff claims that the raises and promotions he received in the years prior to 2012 were "virtually guaranteed with good performance" so it is not proper to infer that Olesiuk lacked discriminatory animus against men prior to 2012. Further, Plaintiff claims that the Defendant had no evidence of deficiencies in Plaintiff's work to justify the reduced ratings. Rather, Plaintiff argues that he was discriminated against on a "sex plus" basis because "he is a male who was accused of sexual harassment against young female interns." Finally, Plaintiff argues that his III rating is discrimination because such a rating is below median nationwide.

To be cognizable under Title VII's prohibition on workplace discrimination, the employer must engage in an adverse employment action. *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016). The Fourth Circuit has held that a downgrade of a performance evaluation could constitute an adverse employment action if it has a tangible effect on the terms or conditions of employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (quotations omitted). But a poor performance evaluation "is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Id.* (quoting *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)).

While Plaintiff did receive a lower performance rating in 2012 and 2013, these ratings were still positive and were accompanied by raises. These positive performance benefits undermine Plaintiff's discrimination claim unless he can allege that the evaluation was used to detrimentally alter his employment. In *Booz-Allen & Hamilton*, the court found that the plaintiff's ratings while one level below his previous annual evaluation, were one level higher

than he had received two years earlier. 368 F.3d at 377–78. The latest evaluation was generally positive and consistent with his earlier evaluations, and the plaintiff received both a pay-raise and a bonus. *Id.* Thus, the court found that there was nothing in the record to suggest that the defendant used the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. *Id.* Just as in *Booz-Allen & Hamilton*, Plaintiff has failed to allege that the PMR Ratings in 2012, 2013, and 2014 led to subsequent unfair treatment except to make conclusory allegations that he was not selected for Merit Promotion Procedures or the Executive Potential Program. Even if those claims are taken as true, they fail to make plausible that the non-selections or the ratings were based on discrimination and the claims are substantially undercut as evidence of unfair treatment by Plaintiff's record of subsequent raises and promotions during his employment.

Because Plaintiff has not and cannot allege that the PMR Ratings constituted adverse employment actions because they were satisfactory, led to raises, and did not lead to other cognizable adverse employment actions, the discrimination claim relating to the PMRs are not cognizable.

## *2. Reprisal Claims*

Plaintiff claims that the 2011 sexual harassment investigation and his 2011 grievance regarding the Letter of Warning prompted the negative reviews in 2012, 2013, and 2014.

While Plaintiff is not required to set forth a prima facie case for reprisal at this stage, the standard is still instructive to whether he has plausibly pleaded the elements. *See McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582, 585 (4th Cir. 2015) (applying prima facie case as guide in motion to dismiss). To establish a prima facie retaliation claim under Title VII, a plaintiff must allege facts sufficient to support an inference that: 1) he engaged in protected

activity; 2) suffered an adverse employment action; and 3) there is a causal link between the protected activity and the adverse employment action; in other words, that the protected activity was a "but-for" cause of the adverse action and not simply a "motivating factor." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 210 (4th Cir. 2014). The decision maker's knowledge of the prior protected activity is "essential to a retaliation claim." *Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014).

Defendant contends that Plaintiff has failed to state a claim for reprisal because he does not allege that the ratings followed in "very close" temporal proximity to any protected EEO activity. Further, Plaintiff does not allege that Olesiuk, who gave the ratings, was aware of any prior EEO protected activity. Specifically, Defendant argues that the 2011 LOW grievance was not protected EEO activity because it did not allege that Plaintiff had suffered discrimination. Similarly, Defendant argues that the informal EEO complaint filed on October 24, 2011 and withdrawn on November 2, 2011 was too short-lived to have put any of the accused employees on notice of Plaintiff's EEO protected activity. Plaintiff counters that the temporal proximity is not relevant in this case because the 2012 review was the first opportunity for Olesiuk to take an adverse employment action against the Plaintiff.

Plaintiff is correct that the temporal proximity can be cast aside where the alleged adverse action was taken at the first available opportunity. *See, e.g., Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 838 (E.D. Va. 2016). But in this case the adverse action was not taken at the first opportunity. The first opportunity for a negative review was Plaintiff's *2011* PMR Review which was issued on March 12, 2012. Plaintiff has not alleged that this review was a reprisal. The 2012 PMR Review upon which Plaintiff attempts to state a claim did not occur until December 2012. Thus, none of the alleged reprisal reviews was the first opportunity to take an

23

adverse action against Plaintiff and none of the alleged reprisals occurred within the generally accepted three to four month proximity required to state a claim. *Perry v. Kappos*, 489 Fed.Appx. 637, 643 (4th Cir. 2012) (unpublished).

Because there is no temporal proximity between the alleged retaliatory PMR reviews and any purported EEO activity, Plaintiff has not met the requirement of a prima facie case. Because Plaintiff has not pleaded a plausible connection between the 2012, 2013, and 2014 PMR reviews and any EEO protected activity, the claims must be dismissed.

### E. Hostile Work Environment Claim

Plaintiff avers that the conduct detailed above amounted to a hostile work environment in which Plaintiff was discriminated against on the basis of sex, age, race, disability, and prior EEO activities. Plaintiff alleges that Defendant's conduct led him to fear that he would lose his job, not be promoted, not have his research published, not receive awards and opportunities, and generally not enjoy his work. Plaintiff further alleges that Defendant's conduct led him to fear any and all interactions with women in the workplace.

Defendant contends that the alleged conduct was not severe or pervasive and is based on conclusory allegations that FDIC witnesses committed perjury; that the FDIC has not disciplined managers for criminal and civil violations; that the FDIC has promoted six women; that three employees retired; and that the vast majority of the persons named in Plaintiff's complaints are minority women. Defendant contends that such statements do not rise to the level of a plausible allegation that Plaintiff was subjected to a severe or pervasive hostile work environment. Further allegations that the FDIC conducts diversity events for African Americans, Hispanics, Asians, and others, but not for Catholics, Mormons, Irish, and Italians; or that his supervisors are political liberals and Democrats; also fail to plausibly allege how Plaintiff was subjected to a

24

severe or pervasive hostile work environment. Finally, Defendant observes that Plaintiff does not allege any instance in which any of Defendant's employees ever referred to Plaintiff's sex, age, race, disability, or prior EEO activity in any dealings with him.

"To proceed on a Title VII hostile work environment claim, a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex [or race], (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quotations omitted). "[O]nly harassment that occurs because of the victim's [protected class] is actionable." *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).

This Court considered a very similar set of circumstances in *Spida v. BAE Sys. Info. Sol., Inc.*, 2016 WL 7234088 (E.D. Va. Dec. 14, 2016). In *Spida*, the Court found that the Plaintiff had failed to state a claim for a hostile work environment. *Id.* at \*6-7. The plaintiff alleged that she had been denied promotions, stripped of responsibilities, and that the employer had failed to act in response to her complaints, among other accusations. *Id.* at \*7. Nevertheless, the Court found that none of these acts could qualify as harassment noting that "she does not allege any threats, disparaging comments, physical contact or verbal abuse of any kind, much less harassment *based on her age or disability.*" *Id.* (emphasis added). Rather, plaintiff had alleged "[d]isagreements with management decisions [which] do not rise to the level of a hostile work environment." *Id.* at \*6.

Plaintiff's accusations are as unconvincing as those rejected by the Court in *Spida*. Plaintiff complains that he was denied promotions and opportunities and supervisors failed to respond to his grievances. But Plaintiff does not plausibly allege that these employment

25

decisions were made on the basis of his protected class. The same is true of Plaintiff's

complaints about promotions given to other individuals and the types of diversity events hosted

by Defendant. Just as in *Spida*, Plaintiff is simply objecting to managerial decisions without

setting forth any basis for a hostile work environment claim. *See id.* at *6.

Plaintiff's charge that he was subjected to a hostile work environment by the accusations

made against him in the sexual harassment investigation is a perversion of the hostile work

environment standard. Defendant investigated reports that Plaintiff had placed *other* employees

in unwelcome situations because of sex. The fact that Defendant thoroughly investigated those

claims and brought them to Plaintiff's attention, while protecting the identities of the accusers,

does not afford Plaintiff a claim for a hostile work environment. To find otherwise would

hamstring an employer's ability to investigate harassment claims in the workplace in a fashion

which balances the interests of due process and protecting victims.

Because Plaintiff has failed to state a claim for a hostile work environment, the claim

must be dismissed.

### IV. Conclusion

For the reasons discussed above, the Court hereby GRANTS Defendant's Motion to

Dismiss. Because Plaintiff has taken multiple opportunities to amend his Complaint already but

has not addressed the infirmities identified by the Court, the Complaint is DISMISSED WITH

PREJUDICE.

March 31, 2017

Alexandria, Virginia

/s/ _____

Liam O'Grady

United States District Judge